O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| MARY ANNE FRANCIA, | ) | NO. CV 09-07519-MAN |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | MEMORANDUM OPINION |
| v. | ) |  |
|  | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

Plaintiff filed a Complaint on October 15, 2009, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's claim for a period of disability and disability insurance benefits ("DIB"). On November 18, 2009, the parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on July 28, 2010, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without

oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for a period of disability and DIB on December 10, 2002. (Administrative Record ("A.R.") 48-50.) Plaintiff claims to have been disabled since December 15, 2001, due to thoracic outlet compression syndrome, impingement syndrome, and possible carpal tunnel syndrome.[1] (A.R. 13-14, 53.) Plaintiff has past relevant work experience as a licensed vocational nurse, certified nursing assistant, and cashier/hostess.[2] (A.R. 54, 848.)

After the Commissioner denied plaintiff's claims initially and upon reconsideration, plaintiff requested a hearing. (A.R. 37-40, 43-47.) On April 21, 2004, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Sally Reason ("ALJ Reason"). (A.R. 431-59.) On July 15, 2004, ALJ Reason denied plaintiff's claims (A.R. 13-20), and the Appeals Council subsequently denied plaintiff's request for review of ALJ Reason's decision (A.R. 5-9). On October 14, 2005, plaintiff sought review in this Court, which remanded the case for further proceedings in a March 26, 2007 Order

---

[1]    Plaintiff amended her onset date from November 20, 2001, to December 15, 2001, to comport with her work history. (A.R. 13, 48, 440.)

[2]    Plaintiff testified that she had a "combination job" -- working both as a cashier and a hostess at the Burbank Airport. (A.R. 848.)

2

1   ("Remand Order").[3]  (A.R. 605-34.)

2

3       On July 13, 2007, the Appeals Council effectuated the Court's
4   Remand Order and remanded the matter to an administrative law judge for
5   a supplemental hearing, which occurred on October 1, 2007.  (A.R. 642,
6   844-54.)  At the hearing, plaintiff again testified before ALJ Reason.
7   Ronald Hatakeyama, a vocational expert, also testified.  (A.R. 855-58.)
8   On November 29, 2007, ALJ Reason denied plaintiff's claims.  (A.R. 529-
9   40.)

10

11      Subsequently, the Appeals Council, in its May 28, 2008 Order,
12  assumed jurisdiction of the case and remanded the matter for further
13  proceedings.  (A.R. 668-70.)  The Appeals Council based its remand on "a
14  discrepancy in [ALJ Reason]'s finding that [plaintiff] can return to
15  [her] past relevant work as a hostess."  (A.R. 668-70.)

16

17      On October 8, 2008, plaintiff testified at a hearing before
18  Administrative Law Judge Zane A. Lang (the "ALJ").  (A.R. 806-16, 827-
19  28, 831-33.)  Medical expert Michael Stuart Gurvey, M.D., and vocational
20  expert Gregory Jones also testified.  (A.R. 804-06, 816-40.)  On January
21  15, 2009, the ALJ denied plaintiff's claims.  (A.R. 494-505.)  That
22  decision is now at issue in this action.

23  ///

24  ///

25  ///

26  _____

27      [3]   The Remand Order directed a remand for two reasons:  first,
    the ALJ improperly rejected the opinion of plaintiff's treating
    physician, Dr. John Larsen; and second, the ALJ improperly discredited
28  plaintiff's credibility.  (A.R. 606-34.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff has not engaged in substantial gainful activity since December 5, 2001, the alleged onset date of her claimed disability. (A.R. 495.) The ALJ further found that, at the time of the decision, plaintiff was a "younger individual" with a "post secondary education." (A.R. 495, 503.) The ALJ determined that plaintiff has the following severe impairments: thoracic outlet syndrome, status post resections of the ribs, bilateral shoulder impingement syndrome, and possible bilateral carpal tunnel syndrome.[4] (*Id.*) The ALJ also determined that plaintiff does not have an impairment or combination of impairments that meets or equals in severity any impairment listed in Appendix 1, Subpart P, Regulations No. 4. (A.R. 496.) Additionally, the ALJ found that plaintiff's allegations regarding her pain and limitations were not entirely credible. (A.R. 497-98, 501-02, 504.)

---

[4] In determining plaintiff's "severe" impairments, the ALJ abandoned ALJ Reason's determination that plaintiff's cervical spine impairment was "severe." (A.R. 495.) This constitutes error. In the 2007 Remand Order, this Court remanded the case to ALJ Reason to remedy specified deficiencies and errors -- namely, to reconsider the opinion of plaintiff's treating physician and plaintiff's credibility. After ALJ Reason issued her decision denying plaintiff's claims, the Appeals Council remanded the matter to the present ALJ based on a discrepancy in ALJ Reason's finding that plaintiff could return to her past relevant work as a hostess. Neither the 2007 Remand Order nor the Appeals Council's Remand Order authorized the ALJ to redetermine the severity of plaintiff's impairments at step two. Accordingly, the ALJ committed legal error by deviating from the scope of the Remand Orders. *See e.g.,* Gallagher v. Astrue, 2009 WL 57033 (C.D. Cal. Jan. 6, 2009)(although remand was limited to step four and step five issues regarding plaintiff's past relevant work and alternate work, the ALJ committed legal error when he made a redetermination of the plaintiff's severe impairments at step two, reassessed the plaintiff's RFC at step four, and eliminated moderate limitations previously found); *see also* Ischay v. Barnhart, 383 F. Supp. 2d 1199, 1214 (C.D. Cal. 2005)("The rule of mandate requires that, on remand, the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision.").

The ALJ determined that plaintiff has the residual functional capacity ("RFC") for:

> work with limitations to lifting/carrying below shoulder level
> only 10 pounds occasionally and less than 10 pounds
> frequently; no weights above shoulder level or overhead
> bilaterally, and that pushing and pulling are limited to the
> below shoulder level capacities. Additionally, [plaintiff] is
> limited to occasionally reaching, handling and fingering in
> all directions (no repetitive fingering such as keyboarding
> for more than 30 minutes at a time without a 5 minute break);
> occasionally crawling; no climbing of ladders, ropes or
> scaffolds; and no work that involves heavy vibrations, such as
> with jackhammers.

(A.R. 496.)

The ALJ concluded that plaintiff was unable to perform her past relevant work. (A.R. 503.) However, having considered plaintiff's age, education, work experience, and medical limitations, as well as the testimony of the vocational expert, the ALJ found that jobs exist in the national economy that plaintiff could perform, including those of a call out operator and a surveillance system monitor. (A.R. 503-04.) Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act through the date of his decision. (A.R. 505.)

///

///

5

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not

6

affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff makes the following four claims:  (1) the ALJ failed to give appropriate weight to the opinion of plaintiff's treating doctor and the diagnosis of plaintiff's chiropractor; (2) the ALJ improperly evaluated plaintiff's credibility; (3) the ALJ improperly assessed plaintiff's RFC; and (4) the ALJ improperly found that plaintiff can perform work other than her past relevant work.[5]  (Joint Stipulation ("Joint Stip.") at 3.)

**I.  The ALJ's Failure To Discuss The Post-Hearing Evidence Constitutes Error.**

"The SSA's regulations and directives allow for a claimant to submit additional evidence after an administrative hearing but before the ALJ renders [his] decision." <u>Lord v. Apfel</u>, 114 F. Supp. 2d 3, 14

---

[5]   Plaintiff subsumes the issue regarding the submission of additional evidence -- plaintiff's 2008 MRI and CT reports -- within her first claim.  For purposes of clarity, however, the Court will address this issue separately.

1  (D.N.H. 2000)(*citing* 20 C.F.R. §§ 404.936(a), 404.944 (1999); HALLEX I-
2  2-630, 1993 WL 643026 (June 30, 1994); HALLEX I-2-678, 1993 WL 751904
3  (June 30, 1994)); *see also* <u>Bates v. Sullivan</u>, 894 F.2d 1059, 1064 (9th
4  Cir. 1990)(noting that the Appeals Council shall consider the entire
5  record, including new and material evidence submitted to it, if the
6  additional evidence relates to the period on or before the date of the
7  ALJ's decision); 20 C.F.R. § 404.970(b).

8

9       In this case, the ALJ failed to discuss plaintiff's updated MRI and
10  CT reports, which were submitted to the ALJ prior to his January 15,
11  2009 decision.  Plaintiff submitted the additional evidence to the ALJ
12  on November 29, 2008 -- approximately seven weeks after the October 8,
13  2008 hearing and six weeks *before* the ALJ's January 15, 2009 decision.
14  (A.R. 485, 494-505, 800.)  The evidence consisted of a CT report[6] dated
15  November 12, 2008, and MRI reports dated July 18, 2008, and July 12,
16  2002.[7]  (A.R. 484-89.)  In pertinent part, the additional evidence
17  appears to show that plaintiff's cervical spine condition has worsened
18  since 2002, particularly at the C5-6 location.[8]  (A.R. 486-89.)

19  ───────────────

20       [6]    When plaintiff submitted the additional evidence to the ALJ,
21  she referred to the November 10, 2008 report as an "MRI report." (A.R.
    484-85.)  Upon closer examination, however, the report appears to be a
22  CT report.  (A.R. 486.)

23       [7]    The additional evidence also consisted of a note from
    plaintiff dated November 26, 2008, indicating that she was scheduled to
24  have an anterior cervical microdiscectomy with fusion and instrumentation
    surgery on December 12, 2008.  (A.R. 489.)

25       [8]    The findings of plaintiff's November 10, 2008 CT scan were as
26  follows:

27       Mild reversal of the cervical lordosis is present and is
         associated with minimal anterolisthesis at C4-5.  Irregular 3
         mm nodular density is present in the apex of the right upper
28       lobe (series 200, image 16).

8

Although the ALJ addresses the 2002 MRI report in his decision, he does not address the 2008 CT and MRI reports.  Accordingly, it is impossible for the Court to determine whether the ALJ rejected or simply ignored that evidence.  *See* <u>Lord</u>, 114 F. Supp. 2d at 14.  While the ALJ was entitled to find the additional evidence "unworthy of credit," he was not entitled to find it "unworthy of comment."  *Id.* at 15-16.  The

---

C2-C3:  Normal.

C3-C4:  Right paracentral disc protrusion measures 1-2 mm results in mild central spinal stenosis and mild flattening of the right ventral portion of the cord.  No neural foraminal narrowing is present.

C4-C5:  Mild decreased disc height is present.  Diffuse disc protrusion and asymmetric to the right which measures 1-2 mm AP which results in mild central spinal stenosis and mild mass effect on the right ventral portion of the cord.  No neural foraminal narrowing is present.

C5-C6:  Mild to moderate decreased disc height is asymmetric to the right.  Focal right paracentral disc protrusion measures 3 x 11 mm (AP by wide) which compresses the right ventral portion of the cord and likely affects the exciting right C6 nerve root (series 3, image 52-53).  Moderate right neural foraminal narrowing is present.  Left neural foramen is widely patent.

C6-C7 to T2-T3:  Normal.

(A.R. 486.)

The impression of the CT scan was as follows:

1. Focal right paracentral disc protrusion at C5-C6 measuring 3 x 11 mm (AP by wide) which compresses the right ventral portion of the cord and likely impinges the exiting right C6 nerve root.

2. Mild reversal of the cervical lordosis with minimal anterolisthesis at C4-C5.

3. Nonspecific irregular 3 mm nodular density in the apex of the right upper lobe which could be related to an area of scarring or a nodule.  Followup CT of the chest is recommended in 12 months to document stability.

(A.R. 486-87.)

9

1   ALJ's failure to discuss the additional evidence, therefore, constitutes
2   error.

3

4   **II.   The ALJ Failed To Give Appropriate Weight To The Opinions And**
5       **Diagnoses Of Plaintiff's Treating Physician And Chiropractor.**

6

7       Plaintiff contends that the ALJ failed to give appropriate weight
8   to the opinion of her treating orthopedist, John Larsen, M.D., and the
9   diagnosis of her chiropractor, Milton L. Payne, D.C. (Joint Stip. at 3-
10  6.) Specifically, plaintiff argues that, while the ALJ provided
11  specific reasons for rejecting Dr. Larsen's and Dr. Payne's opinions and
12  diagnoses, those reasons were not legitimate. (Joint Stip. at 6.)

13

14      **A.   The ALJ Failed To Properly Consider The Opinion Of Dr. Larsen.**

15

16      It is the responsibility of the ALJ to resolve conflicts in medical
17  testimony and analyze evidence. Magallanes v. Bowen, 881 F.2d 747, 750
18  (9th Cir. 1989). In the hierarchy of physician opinions considered in
19  assessing a social security claim, "[g]enerally, a treating physician's
20  opinion carries more weight than an examining physician's, and an
21  examining physician's opinion carries more weight than a reviewing
22  physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir.
23  2001); 20 C.F.R. § 404.1527(d). The opinions of treating physicians are
24  entitled to the greatest weight, because the treating physician is hired
25  to cure and has a better opportunity to observe the claimant.
26  Magallanes, 881 F.2d at 751. When a treating physician's opinion is not
27  contradicted by another physician, it may be rejected only for "clear
28  and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

10

1  1995)(as amended).   When contradicted by another doctor, a treating
2  physician's opinion may only be rejected if the ALJ provides "specific
3  and legitimate" reasons supported by substantial evidence in the record.
4  *Id*.

5

6      An ALJ "has a special duty to fully and fairly develop the record
7  and to assure that claimant's interests are considered." Brown v.
8  Heckler, 713 F.2d 441, 443 (9th Cir. 1983).   Pursuant to 20 C.F.R. §
9  404.1512(e), the Administration "will seek additional evidence or
10 clarification from your medical source when the report from  your
11 medical source contains a conflict or ambiguity that must be resolved,
12 [or] the report does not contain all the necessary information . . . ."
13 *See* Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)(noting that
14 "[i]f the ALJ thought he needed to know the basis of [the doctor's]
15 opinions in order to evaluate them, he had a duty to conduct an
16 appropriate inquiry").

17

18     Here, the ALJ erred by rejecting Dr. Larsen's opinion without
19 stating legitimate reasons, supported by substantial evidence of record,
20 for doing so, and without attempting to recontact Dr. Larsen.   The ALJ
21 rejected Dr. Larsen's opinion regarding plaintiff's standing, walking,
22 and sitting limitations, as well as her need to be absent from work and
23 her cervical spine condition, because, in the ALJ's view, Dr. Larsen's
24 opinion was not supported by the evidence of record and there were
25 contrary examining and other source opinions.   (*See* A.R. 499-501.)
26 However, in view of plaintiff's submission of additional evidence and
27 the ALJ's failure to comment upon it, the Court does not find the ALJ's
28 reasons to be legitimate or supported by the requisite substantial

1   evidence.

2

3       Moreover, it appears that the contrary examining and other source

4   opinions are based on an incomplete medical record, and thus, they

5   cannot constitute substantial evidence.   For example, at the October

6   2008 hearing, Dr. Gurvey testified that plaintiff's central disc bulge

7   did not show a pathology that either explains cervical spine pain or

8   supports Dr. Larsen's "extreme" restrictions.   (A.R. 499-500, 821.)

9   Clearly, however, Dr. Gurvey did not review plaintiff's updated MRI and

10  CT reports, which were not yet available, before rendering his opinion.

11  Further, there is no evidence of record to suggest that the ALJ

12  submitted the additional evidence to Dr. Gurvey following the hearing,

13  so that, if appropriate, he could reconsider his opinion regarding

14  plaintiff's condition and limitations.   In pertinent part, the

15  additional reports appear to show that plaintiff's central disc bulge

16  has increased in size since her 2002 MRI report, and it is unclear what

17  impact, if any, this additional evidence would have on Dr. Gurvey's

18  opinion.   Accordingly, the ALJ's reliance on Dr. Gurvey's opinion, and

19  other treating and source opinions, is improper, because those opinions

20  are not based on a complete medical record and, thus, cannot support a

21  rejection of Dr. Larsen's opinion.

22

23      The ALJ's other stated reasons for rejecting Dr. Larsen's opinion

24  -- *to wit*, that Dr. Larsen's reports contain internal inconsistencies

25  and that his opinion predates plaintiff's surgeries, and plaintiff's

26  condition may have improved -- cannot, without further inquiry, support

27  a rejection of Dr. Larsen's opinion.   First, while Dr. Larsen's reports

28  are not at complete odds with one another, his reports do contain

12

1  different limitations and restrictions,[9] particularly with respect to

2  plaintiff's alleged sitting, walking, and standing limitations.

3  However, to the extent that the ALJ found it "curious" that Dr. Larsen's

4  reports contained differing limitations and restrictions, the ALJ should

5  have recontacted Dr. Larsen in accordance with his duty to conduct an

6  appropriate inquiry.

7

8       Second, the ALJ's suggestion, that plaintiff's condition "may" have

9  improved following her surgeries, is not a legitimate reason for

10  rejecting Dr. Larsen's opinion.   The medical evidence regarding

11  plaintiff's post-surgery condition is equivocal, at best, as evidenced

12  by the updated MRI and CT results, which appear to show that plaintiff's

13  cervical spine condition is worsening.   The uncertainty of plaintiff's

14  condition, in view of the updated MRI and CT results, suggests a need

15

16       [9]   In an April 2003 Medical Source Statement, Dr. Larsen found

17  that plaintiff could stand and/or walk less than 2 hours in an 8 hour
    workday, and sit for 1 to 2 hours with breaks.  (A.R. 147.)  He found

18  that plaintiff would need to alternate standing and sitting "as needed."
    (A.R. 148.)  He noted that plaintiff has limited reaching, handling,

19  fingering, and feeling, as well as environmental restrictions involving
    heights, moving machinery, temperature extremes, chemicals, and dust.

20  Curiously, and perhaps carelessly, he also checked entries indicating
    that plaintiff has seeing, hearing, and speaking limitations --

21  limitations that appear to be wholly unsupported by the evidence of
    record.

22
         In a February 2004 report prepared in connection with

23  plaintiff's worker's compensation claim, Dr. Larsen did not include any
    sitting, standing, or walking restrictions.  (A.R. 401-03.)  He also

24  included no sensory or environmental restrictions.  (Id.)

25       In a March 2004 Physical Residual Functional Capacity
    Questionnaire, Dr. Larsen found that plaintiff could sit and/or stand

26  for more than 2 hours continuously; could sit and stand/walk for at
    least 6 hours in an 8 hour working day (with normal breaks); and needs

27  to walk every 90 minutes for a period of 15 minutes.  (A.R. 421-22.)  He
    also estimated that plaintiff is likely to be absent from work about

28  twice a week as a result of her impairments or treatment.  (A.R. 423.)
    No sensory or environmental restrictions were included.

1    for the ALJ to develop the record further.

2

3         The ALJ's last reason for rejecting Dr. Larsen's opinion -- that
4    "Dr. Larsen is not an expert in thoracic surgery - which is the primary
5    basis for the various limitations that he assessed" -- is not
6    legitimate.   (A.R. 501.)   Although Dr. Larsen is not an expert in
7    thoracic outlet syndrome, Dr. Larsen did rely on the diagnoses of two
8    thoracic outlet syndrome experts, Dr. Sam Ahn and Dr. Sheldon Jordan, in
9    assessing plaintiff's limitations.   In addition, as plaintiff properly
10   notes, Dr. Gurvey, upon whom the ALJ "heavily" relies in rejecting Dr.
11   Larsen's opinion, also is not a specialist in thoracic outlet syndrome;
12   he is a board certified orthopedic surgeon, just like Dr. Larsen.
13   (Joint Stip. at 5; *citing* A.R. 361, 804.)   While the Ninth Circuit
14   directs that greater weight be given to the opinion of a specialist than
15   a generalist, Dr. Gurvey is not a specialist in thoracic outlet
16   syndrome, and there is no opinion from a thoracic outlet syndrome
17   specialist that contradicts Dr. Larsen's opinion.   *See generally* <u>Bunnell</u>
18   <u>v. Sullivan</u>, 912 F.2d 1149 (9th Cir. 1990).   Accordingly, it was
19   improper for the ALJ to reject Dr. Larsen's opinion on this ground.

20

21        **B.   The ALJ Should Revisit His Consideration Of Dr. Payne's**
22             **Diagnosis Regarding Plaintiff's Headaches.**

23

24        According to the Social Security Regulations, a claimant may submit
25   information from other sources, such as chiropractors, to help the ALJ
26   understand "the nature and severity of [the] impairment" as well as how
27   the "impairment affects [the claimant's] ability to work."   *See* 20
28   C.F.R. § 404.1513(e).   Although a chiropractor is not an "acceptable

                                    14

medical source," the ALJ may use evidence from chiropractors when considering the severity of impairments. *See* 20 C.F.R. § 404.1513(d). Ultimately, the ALJ has the discretion to determine the appropriate weight to accord the opinion of a chiropractor. <u>Diaz v. Shala</u>, 59 F.3d 307, 313-14 (9th Cir. 1995); Social Security Ruling 06-03p, 2006 SSR LEXIS 5, *7-8.

In the present case, the ALJ apparently gave no weight to the reports from Dr. Payne, plaintiff's chiropractor, who diagnosed plaintiff with, among other medical conditions, headaches. (A.R. 502.) While headaches may not be within the normal purview of a chiropractor, plaintiff saw Dr. Payne for approximately two years, during which time her headaches ("cephalgia") were well-documented.[10]  To the extent the ALJ attempts to dismiss Dr. Payne's headache diagnosis, because plaintiff's headaches "receive scant mention from any other source," the ALJ errs.  Contrary to the ALJ's finding, plaintiff's complaints of headaches are documented by medical sources, including Dr. Ahn (A.R. 114), Dr. Larsen (A.R. 160, 169, 173, 385), and Dr. Hugh Gelabert (A.R. 758).  Accordingly, the Court finds that the ALJ's reason for not giving any weight to Dr. Gurvey's diagnosis was not legitimate.

Moreover, to the extent that the ALJ cites Dr. Gurvey's "testimony" as a reason to dismiss plaintiff's headaches and any resulting work restrictions, the ALJ errs.  After carefully examining Dr. Gurvey's testimony from the October 2008 hearing, the Court cannot find any

---

[10]    *See, e.g.,* A.R. 273, 277, 281, 285, 289, 294, 300, 306, 311, 315, 322, 325, 331, 333, 405, 407, 409, 411.

15

testimony from Dr. Gurvey regarding plaintiff's headaches.[11]

Accordingly, the Court finds that the ALJ should revisit his consideration of Dr. Payne's diagnosis, and should he elect to give no weight to Dr. Payne's opinion, he should set forth legitimate reasons for so doing that are not based on a mischaracterization of the evidence of record. Further, the ALJ should develop the record further to determine whether plaintiff's headaches warrant a work restriction, and if they do, the ALJ should adjust his RFC determination accordingly.

III.  **The ALJ Improperly Evaluated Plaintiff's Credibility.**

Once a disability claimant produces objective evidence of an underlying impairment that is reasonably likely to be the source of her subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)(*en banc*); *see also* 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a

_____

[11]    The ALJ also stated that "given [plaintiff's] daily activities, including driving, and her medication regimen," plaintiff's headaches do not warrant a work restriction. (A.R. 502.) As discussed *infra*, the Court fails to see how plaintiff's limited daily activities, including driving and complying with her medication regimen, would, as the ALJ suggests, negate plaintiff's headaches and/or possible need for a headache-related work restriction.

claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c).

An ALJ may not rely on a plaintiff's daily activities to support an adverse credibility determination when those activities do not affect the claimant's ability to perform appropriate work activities on an ongoing and daily basis. Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990). As the Ninth Circuit noted in Lester, the ALJ must evaluate claimant's "'ability to work on a *sustained* basis.'" 81 F.3d at 833 (emphasis in original)(*citing* 20 C.F.R. § 404.1512(a)). A claimant need not be "utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).

The ALJ generally stated three grounds for rejecting plaintiff's credibility:  (1) plaintiff's daily activities and "active lifestyle" appear to be inconsistent with her alleged limitations; (2) plaintiff's use of her pain medications does not correspond with the level of pain asserted; and (3) plaintiff's symptoms do not correlate with objective, medical findings. (A.R. 498.) These reasons, while specific, are not

1  legitimate and do not constitute clear and convincing reasons based on
2  substantial evidence as required.

3

4      The ALJ's first ground is not legitimate, because plaintiff's daily
5  activities are not, contrary to the ALJ's finding, inconsistent with her
6  reported limitations.   To support his adverse credibility finding on
7  this ground, the ALJ asserts, for example, that "it appears that driving
8  would be precluded if [plaintiff]'s use of her extremities were as
9  limited as she suggests - and if her medications had such adverse
10 affect." (A.R. 498.)  He further states that plaintiff's "historically
11 rather active lifestyle since the alleged onset date also tends to
12 minimize her claims as to the frequency, intensity and duration of
13 headaches or effects of medication." (*Id.*)

14

15     At the October 2008 hearing, plaintiff testified that she drives
16 her daughter two blocks to the bus stop every day and drives two blocks
17 to her physical therapy session once a week.   (A.R. 809-10.)
18 Additionally, plaintiff testified to the following limitations:  she can
19 sit, stand, and walk for 30 minute increments each; she has a lifting
20 capacity of less than 10 pounds; and she has problems using her hands --
21 such that she cannot keyboard for more than 10-15 minutes and cannot
22 open a water bottle without a hand grip. (A.R. 497, 815-16.)  Plaintiff
23 noted that she has pain in her neck, shoulders, and lower back, and
24 while medications provide temporary relief, they make her drowsy and
25 lightheaded.  (A.R. 811-13.)

26

27     Contrary to the ALJ's finding, the Court does not find the side
28 effects of plaintiff's medications and her self-reported limitations to

1    be inconsistent with the scant amount of time she spends driving.[12] *See*

2    <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001) (noting "that

3    the mere fact that a plaintiff has carried on certain daily activities,

4    such as grocery shopping, driving a car, or limited walking for

5    exercise, does not in any way detract from [plaintiff's] credibility as

6    to her overall disability").

8       Further, the Court does not find that plaintiff leads a

9    particularly "active lifestyle." Beyond her limited, regular driving,

10   plaintiff: performs light chores around the house, consisting of

11   dusting, wiping, and washing laundry; goes grocery shopping once or

12   twice a week; and cooks three to four times a month. (A.R. 810-11.)

13   Plaintiff's limited daily activities -- which the ALJ noted that

14   plaintiff performs slowly and with frequent rests (A.R. 498) -- do not

15   appear to be inconsistent with her alleged medication side effects of

16   drowsiness and lightheadedness, particularly in view of the fact that

17   plaintiff only takes the stronger medications, Vicodin and Flexeril, two

18   to three times a week (A.R. 832). Likewise, plaintiff's daily

19   activities do not appear to be at odds with her self-reported daily

20   headaches, which last for one to two hours a day. (A.R. 812.)

21   Critically, the ALJ fails to explain how plaintiff's basic activities

22   and light household chores translate into the ability to perform full-

---

26      [12] Plaintiff noted in a July 2003 Pain Questionnaire that when
she must travel by car for prolonged periods, she "asks [a] family
27 member to drive [her]." (A.R. 80.) When plaintiff does drive, she
reported in a July 2003 Exertional Daily Activities Questionnaire that
28 she "wear[s] a hand support and place[s] pillows under [her] hands for
support." (A.R. 89.)

1  time work.[13]  *See* <u>Fair</u>, 885 F.3d 602.  This constitutes error.

2

3  The ALJ further attempts to reject plaintiff's credibility by

4  asserting that, "[if plaintiff] had the level of pain asserted, it would

5  seem that she would take [her pain medications] more."  (A.R. 498.)  The

6  ALJ's argument fails for several reasons.  First, although not mentioned

7  in the ALJ's decision, plaintiff testified at the October 2008 hearing

8  that she takes the pain medication Neurontin daily.  (A.R. 832.)

9  Second, while plaintiff did testify that she takes Vicodin and Flexeril

10  only two to three times a week, there is no evidence of record to

11  support the ALJ's implication that she limits her use, because she is

12  not in pain.  (*Id.*)  Rather, the evidence of record suggests that

13  plaintiff limits her use of these strong and addictive medications,

14  because they make her feel lightheaded and drowsy.  (A.R. 812.)  Third,

15  plaintiff testified that the pain she experiences is often related to

16  her daily activities.  (A.R. 558.)  Plaintiff noted, for example, that

17  if she sits for too long, she will experience heavy pressure on her neck

18  and shoulders, her muscles will begin to pinch, and this will cause her

19  to have a headache.  (*Id.*)  Thus, it follows that to the degree

20  _____

21      [13]   Defendant's reliance on <u>Morgan v. Apfel</u>, 169 F.3d 595, 600

22  (9th Cir. 1999), to support his contention that plaintiff's activities
   are inconsistent with her reported pain is misplaced.  In <u>Morgan</u>, the

23  Court found that plaintiff's "ability to fix meals, do laundry, work in
   the yard, and occasionally care for his friend's child served as

24  evidence of Morgan's ability to work."  <u>Morgan</u>, 169 F.3d at 600.  The
   <u>Morgan</u> Court noted that "[i]f a claimant is able to spend a substantial

25  part of his day engaged in pursuits involving the performance of
   physical functions that are transferable to a work setting, a specific

26  finding as to this fact may be sufficient to discredit a claimant's
   allegations."  *Id.*  Here, unlike in <u>Morgan</u>, the evidence does not show

27  that plaintiff spends a "substantial" portion of her day engaged in
   activities transferable to the work environment.  Rather, the evidence

28  shows that plaintiff performs basic activities slowly and with frequent
   rests.  Accordingly, the Court finds the present case distinguishable
   from <u>Morgan</u>.

plaintiff can adjust her position throughout the day -- a limitation which the ALJ does not provide for in his RFC determination -- she can avoid situations that would trigger her need for pain medications. Accordingly, the Court rejects the ALJ's second ground for discrediting plaintiff's credibility because it is neither clear nor convincing.

Lastly, the ALJ attempts to discredit plaintiff by asserting that plaintiff "testified to medical problems that have no foundation and for which she has not been treated, particularly low back pain." (A.R. 498.) As discussed *supra*, the updated MRI and CT results, which appear to show that plaintiff's cervical spine condition has worsened since 2002, were not considered. This additional evidence constitutes objective medical findings that could support plaintiff's reported symptoms, particularly her back pain.[14]

///

///

///

///

---

[14]    The ALJ also needs to consider the post-hearing evidence to determine what impact, if any, it has on his evaluation of plaintiff's allegations of pain. The ALJ attempts to discredit plaintiff's reports of pain by noting that she has benefitted from medications, chiropractic treatments, and physical therapy. (A.R. 498.) While there is evidence that plaintiff has benefitted from medications, chiropractic treatments, and physical therapy, this is not a complete picture of the evidence of record. There are several reports in the records noting that the above treatments were not effective. (*See e.g*, A.R. 114 (June 2002 Report -- plaintiff "has tried physical therapy, acupuncture and chiropractic therapy; all of which have failed to relieve her symptoms"); A.R. 160 (January 2004 Report -- injection ineffective).) Further, the evidence of record shows that plaintiff has remained symptomatic, as best evidenced by her thoracic outlet surgeries in 2006 and 2007, and her anterior cervical microdiscectomy with fusion and instrumentation surgery in 2008. Accordingly, the ALJ needs to review the entire record, including the new evidence, and revisit his evaluation of plaintiff's credibility with respect to her reports of pain.

1    **IV.   The ALJ Must Review And Reconsider Plaintiff's RFC And Plaintiff's**
2          **Ability to Perform "Other Work."**

3

4         Based on the foregoing, there are several matters that the ALJ
5    needs to review and reconsider on remand.   As a result, the ALJ's
6    conclusion regarding plaintiff's RFC and her capacity to perform "other
7    work" may change.   Therefore, the Court does not reach plaintiff's third
8    and fourth claims, *to wit*, that the ALJ erred in determining plaintiff's
9    RFC, and the ALJ erred in finding plaintiff can perform work other than
10   her past relevant work.   To properly review and reconsider these issues,
11   the ALJ needs to consider the additional evidence and determine what
12   weight, if any, the evidence has on his evaluations with respect to the
13   opinion of plaintiff's treating doctor, the diagnosis of plaintiff's
14   chiropractor, and plaintiff's credibility.   Further, to the extent that
15   plaintiff's RFC is reassessed, additional testimony from a vocational
16   expert likely will be required to determine whether plaintiff can
17   perform work other her past relevant work.

18

19   **V.   Remand Is Required.**

20

21        The decision whether to remand for further proceedings or order an
22   immediate award of benefits is within the district court's discretion.
23   Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no
24   useful purpose would be served by further administrative proceedings, or
25   where the record has been fully developed, it is appropriate to exercise
26   this discretion to direct an immediate award of benefits.   *Id.* at 1179
27   ("[T]he decision of whether to remand for further proceedings turns upon
28   the likely utility of such proceedings.").   However, where there are

22

outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179-81.

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors.  *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record).[15]

On remand, the ALJ must correct the above-mentioned deficiencies and errors.  Specifically, the ALJ needs to:  (1) revisit his finding that plaintiff's cervical spine impairment was not "severe"; and (2) in view of the new evidence, review and reconsider his evaluation of both the opinion of Dr. Larsen and plaintiff's credibility.  In addition, the ALJ should revisit his evaluation of Dr. Payne's diagnosis, and recontact Dr. Larsen to address any question he might have regarding Dr. Larsen's findings and/or any perceived inconsistencies between Dr.

---

[15]   This case was remanded twice, once by this Court in 2007, because ALJ Reason improperly rejected the opinion of plaintiff's treating physician and improperly discredited plaintiff's credibility, and once by the Appeals Council in 2008, because ALJ Reason improperly found that plaintiff could return to her past relevant work as a hostess.  Thus, this is the **third** time that this case is being remanded.

In remanding this case, the Court is mindful of the Ninth Circuit's astute comments in Benecke that multiple remands may unfairly "delay much needed income for claimants who are unable to work and are entitled to benefits." 379 F.3d at 595.  Accordingly, the Court directs that this matter be dealt with in an expeditious manner to avoid unnecessary delay and further potential prejudice to plaintiff.

Larsen's 2003 and 2004 reports.  After correcting the above errors and deficiencies, the ALJ needs to reassess plaintiff's RFC.  Further, additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

Lastly, in view of the additional evidence, the ALJ should have a consulting physician examine plaintiff and look at the new records to see if there is any support for plaintiff's alleged limitations.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  November 3, 2010

_Margaret A. Nagle_
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

24